All right, very well. Mr. Parker, we'll hear from you first. Thank you, your honor. May it please this honorable court. My name is Tim Parker. I represent myself and my law firm. I will be as brief as the court will permit me today. I have two issues to address. The first is the order of the district court dismissing the my lawsuit against P.S. Finance on jurisdictional grounds based upon the Rupert Feldman Doctrine. The second is the order of the court dismissing my lawsuit against my insurance company, Travelers, for failing to state a claim. In April 2017, my law firm and I were sued in the Supreme Court of New York County of Richmond by P.S. Finance based upon breach of contract, breach of fiduciary duty, and breach of contract. breach of fiduciary duty and good faith and fair dealing. This was in April of 2017. I filed a motion to dismiss for lack of personal jurisdiction. Both sides filed motions for summary judgment, which the presiding judge, Judge Marazzo, denied in December of 2017. Suis Ponte ruling that he did not have jurisdiction and Suis Ponte ordering us to arbitration. This was after eight months of litigation. I subsequently filed a lawsuit in the United States District Court. I should back up a little bit. I had made demand upon Travelers to provide me a defense in New York and they denied my request for coverage and defense. We subsequently sued both Travelers and Pre-Settlement Finance in the District Court in Arkansas, whereupon the judge dismissed it. It is our argument, your honor, that Rooker-Feldman does not apply because in order for Rooker-Feldman to apply, there has to be a party seeking to invoke the doctrine has to be the winning party. In New York, PSF was not the winning party. They didn't win anything. Counsel, in that regard, why is the Department of Law a losing party on the issue of whether it could litigate its claims without going to arbitration? Why aren't we the losing party? Well, first of all, your honor, nobody... As to the issue of whether you could litigate without going to arbitration specifically. Yes, you can litigate without going to arbitration, your honor. They can waive the right to go to arbitration, which they did by suing us. But didn't you lose that issue? No, I didn't lose the issue. They filed a motion for summary judgment in lieu of filing complaint and judge denied. I thought the New York court ruled against you on the question of whether you had to go to arbitration. No one ever requested arbitration until after the judge sui sponte ordered us to arbitration. Well, okay, it was a sui sponte order, but you were the one who was harmed by it, I guess. No, and in fact, in the... You were precluded then from pursuing your action in court, right? No, your honor, because the judge ruled he did not have jurisdiction. Well, he had jurisdiction to decide the arbitration question, did he not? If they had asked him to decide an arbitration question instead of seeking a legal remedy, they would have. This kind of goes to the case that appeared before me. They sought a legal remedy, money damages, without ever asking for arbitration. And under the laws of New York, they have waived that. Well, that's something you could have raised in New York, but the judge, for whatever reason, decided to compel arbitration. He did. And the question was whether you should be allowed to basically re-litigate that in Arkansas now in federal court. But he also ruled he did not have jurisdiction, and I can't ignore that part of his order. And also, in the New York proceeding, Mr. Slauson, who represents PS Finance, has stated that he lost completely at the trial level. And I think we filed that with this court on January 20th, 2020. So what's really happening is PSF in the Arkansas litigation is collaterally attacking that part of Judge Marazzo's ruling, stating that he doesn't have jurisdiction, while seeking to invoke that part stating that he does have the right to compel arbitration. It's my understanding that under New York law, the court did have jurisdiction to decide the arbitration issue, even if it didn't have jurisdiction over the case on Marazzo. What's your response to that? My response is they've waived by seeking a money judgment in New York. And I don't see how PS Finance could be considered a bailing party in New York. That hasn't been decided at this time. The second part of my argument goes to the issue of the insurance coverage. After we had made demand upon travelers to provide us a defense, they refused. There are two components of the traveler's policy, the business owner's property coverage, which provides insurance that affords protection to money and securities that are lost or physically damaged. The second part is the commercial general liability aspect of the policy that covers tangible personal property. Travelers has claimed that there was a voluntary parting exclusion that applies. This cuts directly to page three of the contract between my client Eureka Woodworks and PSF, which specifically states in the event that there is no recovery from judgment, settlement, or verdict on Eureka Woodworks' claim with the Deepwater Horizon Claim Commission, that PSF will be entitled to nothing. There was no recovery from judgment, settlement, or verdict. There were three affidavits filed, one from myself, one from the attorney in Texas handling the litigation, and the third from my client Harry Wilkes. All three state that there was no judgment, settlement, or verdict. Indeed, the claim ended up being denied in March of, I believe, 2013, because my client was outside the zone of economic recovery, and his claim was denied. He never got a settlement out of it. So, the interim payments that were received by my client that did not require any type of release or settlement agreement or finality in April and May of 2012, that was not money from a judgment, settlement, or verdict in pursuant to the express language of the contract. I was required to turn that money over to Eureka Woodworks, which I did when their president made demand upon me for it. So, there was no voluntary parting. The voluntary parting exclusion doesn't apply because I was required to give them, my client, its money in the absence of a judgment, settlement, or verdict. Mr. Parker, did you cite or can you cite any case that held the transferring money pursuant to a contract as involuntary? If it's his money, I mean, it's his money. I don't have any, I mean, that's Rule .15 of the Arkansas Rules of Professional Conduct. So, the answer is no? Well, I can't cite you a case. I can cite you a case out of New York with regard to whether or not that was a settlement. And the case is P.O.L.I.P.O. v. Sanders, 170 M.I.S.C. 2nd 833, 245 A.D. 2nd 2, 1st Department in 1997. And that indicates that this was not a settlement. Well, I think my question is that a transfer pursuant to a contract, is there a case that says that's involuntary? I think, I will quote you, I can't quote you a case, I can quote you a dictionary definition from Merriam-Webster under the heading, definition of voluntary, there is a subcategory for law, acting or done without legal obligation. I mean, I think we're required to turn over our client's money to them, if it's theirs. So, I guess that is essentially my argument. I think the business owner's property coverage form covers me on that. And I think I would argue to the court that the district court erred in holding that it did not. And certainly when that property was turned over to the client, it was, in effect, lost because it could not be recovered since it was his money. All right, thank you for your argument. Would you like to save the remainder for rebuttal? Yes, your honor, please. Thank you. Very well, you may. Mr. Younger, we'll hear from you on behalf of Travelers. May it please the court. This court should affirm the district court's decision to dismiss the Parker Law Firm's and Tim Parker's complaint against the Travelers Identity Company. Simply, Parker is not entitled to coverage when it paid funds to its client instead of a litigation financing company that is claiming those funds. This lawsuit is an outgrowth of Parker's representation of Eureka Woodworks, Inc. in claims that Eureka asserted against British Petroleum after the oil spill in the Gulf of Mexico. During that representation, Eureka obtained financing from PS Finance, LLC, and Parker signed off on that agreement and its terms. PSF claims that two payments from BP are owed to it under the financing agreement and that Parker gave the funds to Eureka. It's for that that Parker's seeking coverage, but there's no coverage under the policy. Now, as Mr. Parker stated, there are two main types of coverage at issue here. One is first-party coverage for business personal property, and the other is third-party commercial general liability coverage, CGL. In his argument, Mr. Parker only addressed the voluntary parting exclusion, which is part of the first-party property coverage. I'll start with that. He says that there was no voluntary parting with the property, but what we know, based on his own allegations, is that he evaluated the settlement payment, he evaluated the PS Finance contract, and he made a decision to provide the money to his client instead of PSF. Now, we cited the court to a series of cases that hold that even where a parting is induced by fraud, there's no involuntariness for purposes of that exclusion. So an interpretation of a contract leading to a conclusion that money should be paid is certainly not involuntary. Parker says that the agreement with PSF is what compelled his decision. But all that that agreement says is that PSF is to be paid money if it's owed, and Parker's client, and this is important, specifically authorizes Parker to pay the money to PSF if it is owed. Parker says that he had an obligation under the rules of professional conduct to give the money to the client. But what the rules of professional conduct say is that if there's a dispute, as in if Parker thought there was a dispute about who was entitled to the money, he's simply to segregate those funds until the dispute is resolved. So the voluntary parting exclusion applies here. In making his argument to the court, Mr. Parker has skipped over a variety of issues that also preclude coverage here. The first is that he's talking about checks, and he's talking about money that was deposited into a bank account. There's no physical loss or damage to the checks, and money deposited in an account does not have a physical existence. So still under the business personal property provision, he doesn't get into the door on the insuring provision, which requires physical loss or damage. We also cite the court to an exclusion for loans and similar transactions. Just like this, a litigation financing agreement that created a lien on settlement funds. Mr. Parker asks for a defense, but there is no defense for first-party claims. Again, those would normally be claims that Parker's asserting for his own loss, not a third-party claim that requires a defense. Mr. Parker failed entirely to address the CGL section of the policy. First and foremost, under the insuring agreement of the CGL section, there's no property damage. That is defined to require tangible property. Mr. Parker, in his briefing, conflates money, currency, with a check and funds deposited into a bank account. Case law draws a distinction there. One is tangible, coins, currency, and the other is not tangible property. He says that there was an occurrence here, but there was not. There was no accident under the policy, because what Parker did is he paid the funds, evaluated the contract, and paid them according to his own interpretation. That's not an accident. He may have been mistaken about who the correct payee was, but as Arkansas case law states, there were no unexpected consequences from his conduct. In other words, Eureka got the money, PSF did not. And to bolster that point, your honors, there's an exclusion within the policy for intentional acts. And here, the act was intentional. And I would point your honors to your case that was decided, it was actually under Missouri law, but American Family Mutual Insurance Company, that held an act was still intentional, even if it's premised on a mistaken belief. There, an individual thought he was burning an abortion clinic. But it turned out that the building he burned was not actually an abortion clinic. That didn't make the act of burning unintentional, just like here. The fact that Parker may have been wrong about who the correct payee was, didn't make the payment of funds unintentional. And finally, your honors, there's an exclusion in the policy, the CGL section still, for legal services. Parker received money as Eureka's counsel. Only lawyers receive client funds. Some of that money passed through his lawyer trust account. Only lawyers have those, and he distributed the money. And again, he did so based on his interpretation of an agreement. Lawyers read and interpret agreements and make decisions based on them for their clients. And that's exactly what happened here. And finally, your honors, while the CGL section can provide for a defense, it's also true that no defense is required when the claim will not plausibly fall within the coverage. The policy states that travelers has no duty to defend claims for property damage to which this insurance does not apply. And for all of these reasons, your honor, I ask that you affirm the district court's dismissal of the complaint against travelers. Thank you. Very well. Thank you for your argument. Mr. Slosen, we'll hear from you next. Thank you, your honors. Can you hear me? Yes. Okay. May it please the court, your honor. P.S. Finance LLC requests that the court affirm the lower court's decision dismissing the case based upon the Rooker-Feldman doctrine. As was indicated by Mr. Parker, P.S.F. initiated this case by a motion for summary judgment in lieu of complaint. There was no complaint. That was filed in April 2017. Over the next four months, the party filed additional motions. Mr. Parker filed a motion to dismiss based on jurisdiction. We oppose that. The court then decided that it did not have the ability to judge the case on the merit, but did, in essence, decide that it had the jurisdiction to direct the parties to arbitrate. Now, the contract, appendix page 34, there's two clauses, paragraph 9 and paragraph 10. Paragraph 9 is the choice of form and choice of law, which talks about a New York court having the right to enforce the terms of the agreement. And paragraph 10 is the arbitration clause, which actually says that the arbitration association has the right to determine a breach of the contract. So the court, when it said it didn't have the jurisdiction to decide the issue, that was all they were deciding was that they didn't have the jurisdiction to decide the merits of the case. Now, after the court entered that order in December 2017, P.S.F. filed their demand for arbitration in February of 18. Mr. Parker then took an action in May of 2018 to compel travelers to provide coverage and sought a claim against P.S. Finance. They were named as a defendant, but there was no actual claim. That was dismissed. He then filed another action, which was transferred to federal court. In the argument where P.S. Finance made a motion to dismiss the claim, Mr. Parker actually said that he was looking to collaterally attack the New York judgment. So Rooker-Feldman had three parts. The federal plaintiff lost in state court. The plaintiff complained of an injury caused by the state court judgment, which judgment was rendered before the federal suit was filed. And the plaintiff is inviting the district court to review and reject the state court judgment. All three parts of Rooker-Feldman are present here. The issue of whether Mr. Parker is a loser in the state court, I think he said he's not. There's a Sixth Circuit court case that we cite in our papers that says that a dissatisfied party, and I believe that's Piper v. American Arbitration Association, says that a dissatisfied party cannot be permitted to file an appeal of an order compelling arbitration. Did that case involve a sua sponte action to compel arbitration? I do not believe so, Your Honor. Does that matter in this situation? I mean, can we characterize Parker as a losing party when it's a sua sponte action? Well, he's certainly a dissatisfied party. There's a New York case that we cite in our brief, Barbie v. W.E. Hutton, where very similar circumstances took place. The plaintiff in that case, and Barbie is 384 N.Y.S. 2nd, 828, Appellate Division, 1976. Barbie, they filed a summary judgment motion in lieu of complaint. The court, sua sponte, ordered the party to arbitrate, and that was upheld by the Appellate Division. So, what does Mr. Parker mean when he says you filed something in New York that said you were the loser? Well, there's an appeal pending in New York in the 2nd Department. What did you say in the appeal that suggests that you lost in the trial court? Well, I believe he said we were both losers. In what respect did you lose by the arbitration order? Well, because we did not win the summary judgment motion in lieu of complaint, which seeks to expedite the process in order to get a judgment. So, what really is lost in the appeal? I did not file an appeal, Your Honor. We filed the man with the American Arbitration Association as required by the court's order. Mr. Parker is the one who filed the appeal. So, are you defending the arbitration order of Judge Marazzo? That's correct, Your Honor. I see. And then back on Rooker-Feldman, are you familiar with the Exxon Mobil case from the Supreme Court? Yes, Your Honor, but I think it was cited. I believe it was cited, Your Honor. The point is Exxon Mobil said some of the courts of appeals had been applying Rooker-Feldman too broadly, and that Rooker-Feldman should be not substituted for other doctrines like issue preclusion and claim preclusion, that it really was limited to cases where state court losers were filing lawsuits complaining about injuries they suffered as a result of the state court judgments. I think that's a fair summary. And I'm wondering, what do you see as the injury that the Parker Law Firm is claiming was caused by the state court judgment? That's challenging. It's a federal case. Go ahead. That he has to orchestrate the claim in the AAA. I believe that's what his injury he's claiming. The injury is the inability to proceed in court. Well, in Arkansas court, Your Honor. Well, he can't proceed in New York court either, as I understand it. Probably not. I don't understand. I thought the New York judge ruled that Parker could not proceed in the New York court. He didn't say anything about Arkansas court. Well, he said that the merit-based claims need to be determined in the AAA, which, in our opinion, precludes an action in federal court in Arkansas, which says that they don't have to arbitrate. Well. I'm not following. You seem now to be saying that the New York ruling by its own force applies. Is that what you're saying? Well. That it's not a Rooker-Feldman issue, it's just a direct application of that judgment? Well, Your Honor, Mr. Parker is speaking to overturn the New York decision where the judge said the parties have to arbitrate these claims. So he's asking the federal court to overturn a state court judgment. Even though it's not a final judgment on the merits, I believe Farron v. Searcy, 227 B.R. 279, 1998, says that Rooker-Feldman is not dependent on a final judgment on the merits. All right. Well, thank you for your argument. Thank you, Your Honor. Mr. Parker, we'll hear from you in rebuttal if you'd like. Your Honor, I will read to you what Mr. Slozen filed in October of 2019, October 15, 2019, in New York, which I filed with this court on January 20, 2020. It states, because the appellants, which is Tim Parker and Parker Law Firm, were partial winners and the respondent, PSF, lost completely at the trial level, there was no need for the respondent to serve the order of notice of entry, and this appeal is untimely. Now, in New York, you have to do what's called file a notice of entry in order for the judgment to be effective in the time to file the appeal run. We have already appealed that in New York. We have filed a motion to stay the arbitration, and the Second Department of the Supreme Court of New York Appellate Division has already stayed that arbitration, and that was also filed January 20, 2020, with this court. But more specifically, we've lost nothing in New York. We are not losers. There's been no decision that goes to the merits, and this court, as well as the U.S. Supreme Court, has repeatedly stated that Rupert Feldman is confined, the application of that doctrine is confined to state court losers. In other words, the party seeking to invoke the doctrine must be a state court winner, which Mr. Slosen has admitted up in New York that he didn't win. He says he lost completely, which he did. He filed one thing in his motion for summary judgment in lieu of complaint, which was that summary judgment be entered awarding his client money damages, which Judge Marazzo denied. So if that's not losing, I don't know what is. I would like to turn now to the argument by travelers. Traveler cites several cases on involuntary parting in its favor, and I've cited some on the other side of the court. There is a major difference between this case and all those cases. In those cases, which have been cited by both sides, myself as well as travelers, it is undisputed that the person seeking insurance coverage  in my case, we gave the money to the right person because there had been no judgment, settlement, or verdict, and pursuant to page three of the agreement, which I believe is found on page 31 of the appendix, I don't see how I can lawfully keep a client from having the money that belongs to him. The Arkansas Supreme Court has routinely stated that insurance companies have a duty to defend their clients from frivolous claims that are baseless or groundless, and that's what we have here, Your Honor. I gave the money to the right person. I see no basis under the law that I could deny the president of Eureka Woodworks the money that had been paid out in interim payments because there was certainly no judgment, there was certainly no verdict, and there was no settlement because there was no documents defectuating a settlement. There was no agreed-upon amount for the settlement. In fact, his claim was denied, I think it was in March of 2013, and that appears on page 175 of the appendix, as I'm sure the legal eagles that help you will be able to show. In fact, there was an appeal of that denial that the affidavit of Michael Watts references where he filed an action in U.S. District Court in Louisiana that included Eureka Woodworks. So, if a claim is settled, you don't continue litigating it for another year and continue pursuing efforts to get compensation. It's over when you settle. That did not happen here. My client's claim was denied. Additionally, the business owner's property coverage, it covers not only money, but it also covers securities. So, that's a specious argument that the checks have no physical form because securities specifically includes negotiable instruments that represent money. And certainly, those interim payment checks from the Gulf Coast Claims Commission to my client would fall in that category. I must be out of time. You are out of time. Thank you for your argument. Thank you, Your Honor, and the judges for listening. Thank you to all counsel for your arguments today. The case is submitted, and the court will file an opinion in due course. Thank you.